IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| Regan Berg,<br><br>          Plaintiff,<br><br> vs.<br><br>Fargo Public School District and<br>Board of Education of City of Fargo,<br><br>          Defendants. | **ORDER**<br><br>Case No. 3:21-cv-87 |

  Before the Court is a motion for summary judgment by Defendant Fargo Public School District (the "School District") and Defendant Board of Education of City of Fargo (the "Board") (the School District and the Board together, the "School") (Doc. No. 60), and a motion for partial summary judgment by Plaintiff Regan Berg (Doc. No. 64). The School opposes Regan's motion, and Regan opposes the School's motion. Doc. Nos. 72, 73. For the reasons below, the School's motion is granted, and Regan's motion is denied.

**I.  FACTS**

  This case involves allegations of violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et. seq ("Title IX") and a state-law negligence claim.[1] Regan claims the School's deliberant indifference and "actions and inactions" in response to reported "student-on-student" sexual assaults that occurred off the school grounds violated Title IX and were generally negligent under state-law. Doc. No. 6.

---

[1] The Court is familiar with the general facts of this case, given the earlier motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) brought by the School. See Doc. No. 30. In that order, Regan's parents, Jennifer and Brian Berg, and their claims against the School were dismissed from this action, leaving only Regan's Title IX and state-law negligence claims remaining. Id.

From October 2019 to May 2020, Regan was a student attending Judge Ronald N. Davies High School ("Davies") in Fargo, North Dakota. Doc. No. 6 ¶ 6. The School District is the school district where Davies is located, and the Board is the governing entity of the School District. Id. ¶¶ 8-11.

### A.     The Assaults

On October 20, 2019, Regan and Jane Doe were at the Bergs' home with John Doe 1 and John Doe 2. Id. ¶ 33. Regan, Jane Doe, and John Doe 1 were students at Davies. Id. John Doe 2 was a student at Fargo North High School ("North") in Fargo, North Dakota. Id. That evening, while in her home, Regan was sexually assaulted by both John Doe 1 and 2, and Jane Doe was sexually assaulted by John Doe 1. Id. The assaults were immediately reported to the Fargo Police Department. Id. ¶ 34. It is undisputed that the School had no involvement with, had no connection to, and had no control over, any of the events that evening or the following morning. Doc. No. 62-1 at 70:22-71:3. A criminal investigation followed (id. at 72:22-84:20), and eventually, both John Doe 1 and 2 were adjudicated as guilty of sexual assault. Id.

### B.     Davies' Safety Plan and Protective Measures

Shortly after the assaults, Regan, her parents, and Jane Doe met with Troy Cody (principal at Davies), the Davies school resource officer, and a school counselor, and informed them of what happened at the Bergs' home. Doc. No. 6 ¶ 35. At the meeting, several matters were discussed, and steps were proposed by Davies to mitigate the interactions between Regan and John Doe 1. Id. For example, among other things, Davies proposed implementing a safety plan and indicated it would attempt to keep the John Doe 1 and Regan separated. Id. Regan was also provided a designated "safe room" at Davies she could use at her discretion. Id. Regan was also offered an

escort to accompany her while at school, but she rejected that proposal. Doc. No. 62-1 at 100:15-101:12.

After the meeting, Regan's teachers were informed that she had experienced a traumatic event and would need support and flexibility with her schoolwork. Id. at 106:3-109:25. Such support and flexibility included a change in a book assigned in Regan's English class, due to concerns about the potential impact of the subject matter on her. Id. at 118:9-119:2. She was also excused, at any time, to go to see her school counselor or the school nurse whenever she needed support and assistance or if she felt unsafe. Id. at 36:1-38:3, 99:4-100:14. And according to Regan, following implementation of the safety plan by Davies and the School, she suffered no further sexual harassment, abuse, or discrimination from John Doe 1 or John Doe 2. Id. at 90:5-94:6.

## II.   DISCUSSION

Two claims remain in this action— (1) the Title IX claim, and (2) the North Dakota negligence claim. For her part, Regan moves for partial summary judgment on her Title IX claim, generally arguing that the School's response to her sexual assault was non-existent, deliberately indifferent, and made her vulnerable to continued harassment. The School, for its part, moves for summary judgment on both claims. It argues that, as a matter of law, it cannot be liable for a Title IX claim where the assault occurred at Regan's home and where she admits no further harassment occurred after the initial assault. The School further argues that its response was not deliberately indifferent, and Regan's negligence claim similarly fails as a matter of law.

### A.   Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Id.; see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is 'genuine' if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party." Schilf v. Eli Lilly & Co., 687 F.3d 947, 948 (8th Cir. 2012) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "A fact is material if it 'might affect the outcome of the suit.'" Dick v. Dickinson State Univ., 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting Anderson, 477 U.S. at 248). Courts must afford "the nonmoving party the benefit of all reasonable inferences which may be drawn without resorting to speculation." TCF Nat'l Bank v. Mkt. Intelligence, Inc., 812 F.3d 701, 707 (8th Cir. 2016) (quoting Johnson v. Securitas Sec. Servs. USA, Inc., 769 F.3d 605, 611 (8th Cir. 2014)).

"At summary judgment, the court's function is not to weigh the evidence and determine the truth of the matter itself, but to determine whether there is a genuine issue for trial." Nunn v. Noodles & Co., 674 F.3d 910, 914 (8th Cir. 2012) (citing Anderson, 477 U.S. at 249). If the movant demonstrates the absence of a genuine issue of material fact, "[t]he nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). "However, if a plaintiff cannot support each element of its claim, summary judgment must be granted, because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial." Cousineau v. Norstan, Inc., No. 00-1113 DSD/JGL, 2001 WL 1640118, at *3 (D. Minn. July 26, 2001), aff'd, 322 F.3d 493 (8th Cir. 2003) (citing Celotex, 477 U.S. at 322-23). Rule 56 requires a proper summary judgment motion to be opposed by the kinds of evidentiary materials listed in Rule 56(c), such as depositions,

documents, affidavits or declarations, stipulations, admissions, and interrogatory answers. See Celotex, 477 U.S. at 324.

### B.  Title IX Student-on-Student Harassment Claim

To start, both parties move for summary judgment on Regan's Title IX claim. Regan argues that, as a matter of law, the Defendants were deliberately indifferent to her sexual assault by another student and this deliberate indifference made her vulnerable to further harassment at Davies. The School argues that, as a matter of law, Regan's Title IX claim fails because she admits she suffered no further harassment while at Davies and that the School's actions in response to Regan's assault do not amount to deliberate indifference.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Where a Title IX claim is based on harassment, the school is liable in damages only where it is "(1) deliberately indifferent (2) to known acts of discrimination (3) which occur under its control." Ostrander v. Duggan, 341 F.3d 745, 750 (8th Cir. 2003) (internal quotation marks omitted). Additionally, the discrimination must be "so severe, pervasive, and objectively offensive that it can be said to deprive the victim[ ] of access to the educational opportunities or benefits provided by the school." Davis, 526 U.S. at 650. Although sexual harassment and sexual abuse clearly constitute discrimination under Title IX, Franklin v. Gwinnett County Public Schools, 503 U.S. 60, 75 (1992), a school will only be "liable for situations in which it 'exercises substantial control over both the harasser and the context in which the known harassment occurs.'" Shrum, 249 F.3d at 782 (quoting Davis, 526 U.S. at 646).

### 1. Substantial Control

As an initial matter, the School correctly notes that, on these facts, the lone incident of sexual assault and harassment did not take place in a context subject to the School's control. As the United States Supreme Court explained in <u>Davis</u>:

> The statute's plain language confines the scope of prohibited conduct based on the recipient's degree of control over the harasser and the environment in which the harassment occurs. If a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference "subject[s]" its students to harassment. . . . Moreover, because the harassment must occur "under" "the operations of" a funding recipient, <u>see</u> 20 U.S.C. § 1681(a); § 1687 (defining "program or activity"), the <u>harassment must take place in a context subject to the school district's control</u>.

526 U.S. at 644-45 (emphasis added).

Here, it is undisputed that the lone incident of harassment—the sexual assault—occurred at Regan's home, on a weekend. It is undisputed that following the sexual assault, no further abuse, harassment, or discrimination occurred. And it is admitted and undisputed that no abuse, harassment, and/or discrimination occurred at Davies or in any situation or context subject to the School's control.

Put simply, there is no "causal nexus" between the School's conduct and the sexual assault that occurred in a private home with no connection to the School whatsoever. See <u>Shank</u>, 993 F.3d at 573; <u>Roe</u>, 746 F.3d at 884 (liability is dependent on control over the situation in which the harassment or assault occurs); <u>Ostrander</u>, 341 F.3d at 750. This is fatal to Regan's Title IX claim because the School did not exercise substantial control over the student conduct in her own home. And thus, as a matter of law, and on these facts, the School cannot be liable under Title IX, and the School is entitled to summary judgment on that claim.

### 2. Deliberate Indifference and Vulnerability

Notwithstanding the issue of substantial control, Regan's Title IX claim also fails on the merits. Recall that she claims the School's response to her sexual assault was deliberately indifferent. More specifically, Regan argues, citing and relying on Davis, that the School's deliberate indifference made her vulnerable to further harassment. She posits that deliberate indifference causing only vulnerability to potential harassment is enough to trigger Title IX liability. Doc. No. 73 at 14-15.

In Davis, the United States Supreme Court considered a student-on-student sexual harassment claim against a school and articulated the standard for these Title IX claims. "A funding recipient 'may not be liable for damages unless its deliberate indifferent subject[s] its students to harassment. That is, the deliberate indifference must, a minimum, cause [students] to undergo harassment or make them liable or vulnerable to it." Davis, 526 U.S. at 644-45 (alterations in original) (emphasis added); see also Shrum ex rel. Kelly v. Kluck, 249 F.3d 773, 782 (8th Cir. 2001) ("Deliberate indifference must either directly cause the abuse to occur or make students vulnerable to such abuse."). The question of "vulnerability" though has led to a divide in the United States Circuit Courts of Appeals as to whether an actionable Title IX claim must involve post-notice harassment or if only pure vulnerability to further harassment is sufficient (which is Regan's position). Compare Fitzgerald v. Barnstable Sch. Comm., 504 F.3d 165, 169 (1st Cir. 2007); Williams v. Board of Regents, 477 F.3d 1282, 1297 (11th Cir. 2007) (vulnerability to further harassment is sufficient) with Reese v. Jefferson School District, No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Kollaritsch, 944 F.3d 613, 620 (post-notice harassment necessary to sustain a claim).

7

While the Eighth Circuit Court of Appeals has not directly addressed this issue, its cases do highlight the importance of there being a causal relationship to the deliberate indifference. Said another way, and consistent with Davis, there must be a causal nexus between the deliberate indifference and the alleged harassment, discrimination, or assault. See K.T. v. Culver-Stockton College, 865 F.3d 1054 (8th Cir. 2017) (citing Davis and finding no causal nexus alleged between College's inaction and plaintiff's sexual assault at the college). In that sense, K.T. is instructive. In K.T., a prospective high school student was visiting the Culver-Stockton College campus. Id. She attended a party at a fraternity house and was sexually assaulted. Id. She brought a Title IX claim against the College, alleging (as Regan alleges here) that the College failed to investigate and that she suffered mental and emotional distress as a result. Id. As to deliberate indifference, the Eighth Circuit Court of Appeals said, "while K.T. was dissatisfied with Culver-Stockton's response, based on the allegations in the complaint the response cannot be characterized as deliberate indifference that caused the assault." Id. (emphasis in original).

So too here. Like in K.T., the only incident of harassment at issue in this case is the single assault that happened in Regan's home. By her admission, no other harassment or discrimination occurred. As a result, there is no causal nexus between the School's response and (1) Regan's assault, or (2) any other harassment or discrimination. Regan's argument that the School's response (or lack thereof) caused her to be vulnerable to the possibility of future harassment is too

attenuated and appears to be unsupported by Davis and Eighth Circuit law. Because there is no possible causal nexus, the deliberate indifference element fails as a matter of law.[2]

### 3. Actual Knowledge

Like the deliberate indifference element, Regan has also failed to prove actual knowledge. The actual knowledge element requires schools to have more than after-the-fact notice of a single instance in which the plaintiff experienced sexual assault. See Plamp v. Mitchell Sch. Dist. No. 17-2, 565 F.3d 450, 454, 457 (8th Cir. 2009) (no actual knowledge of discrimination where a high school student's parents "immediately reported" a teacher's sexual harassment of the student). A plaintiff must show that the funding recipient had prior notice of a substantial risk of peer harassment "in the recipient's programs," see Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290 (1998), based on evidence such as previous similar incidents of assault. In Thomas v. Board of Trustees of the Nebraska State Colleges, the Eighth Circuit Court of Appeals stated that a plaintiff must show that the school "had actual knowledge that [the assailant] posed a substantial risk of sufficiently severe harm to students based on [the assailant's] previous known conduct." 667 Fed. Appx. 560, 562 (8th Cir. 2016) (per curiam).

The issue of actual knowledge was also addressed by the Eighth Circuit in K.T. Notably, the Eighth Circuit stated that there were no assertions that Culver-Stockton knew—prior to the alleged assault on K.T.—that individuals in the recruiting program faced a risk of sexual harassment. K.T., 865 F.3d 1059. The same is true here. The record can only be read to demonstrate

---

[2] In this Court's view, the deliberate indifference element also fails because the School's response was not unreasonable, given the safety plan and the various other safety measures the School implemented to protect Regan. Davis, 526 U.S. at 645 (noting deliberate indifference is established when a school district's response to reported sexual harassment makes a student victim "liable or vulnerable" to harassment and is "clearly unreasonable in light of the known circumstances.") (emphasis added).

after-the-fact notice of a single instance of a sexual assault, because again, Regan admits no other harassment, discrimination, or other conduct occurred. That after-the-fact notice, combined with the admission in the record and the single instance of sexual assault, is not enough to show actual knowledge under Davis.

### 4. Severe, Pervasive, and Objectively Offensive Discrimination

Finally, Regan's Title IX claim fails because the undisputed facts demonstrate she was not subjected to "severe, pervasive, and objectively offensive" harassment or discrimination. Davis, 526 U.S. at 651. As explained in K.T.:

> By the language of Title IX itself, liability lies only where the plaintiff is "subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a) (emphasis added). The Supreme Court in Davis interpreted this provision to "suggest[ ] that the behavior be serious enough to have the systemic effect of denying the victim equal access to an educational program or activity." 526 U.S. at 652, 119 S.Ct. 1661. "[I]n theory," the Court explained, "a single instance of sufficiently severe one-on-one peer harassment could be said to have such an effect, [but] we think it unlikely that Congress would have thought such behavior sufficient to rise to this level in light of the . . . amount of litigation that would be invited by entertaining claims of official indifference to a single instance of one-on-one peer harassment." Id. at 652-53, 119 S.Ct. 1661; see also Williams, 477 F.3d at 1297 ("[D]iscrimination must be more widespread than a single instance of one-on-one peer harassment." (internal quotation marks omitted)). Rather, the discrimination must be "severe, pervasive, and objectively offensive." Davis, 526 U.S. at 651, 119 S.Ct. 1661.

K.T., 865 F.3d at 1059.

Here, as in K.T., the only allegation of harassment or discrimination is the single sexual assault. Once again, the admission by Regan that she did not experience any other harassment, or discrimination beyond the initial assault is fatal to her claim. While this Court is truly sympathetic

to Regan and what happened to her, the "singular grievance on its own" is not enough to satisfy this element of a peer harassment claim.[3] Id.

In sum, based on the undisputed material facts, Regan cannot demonstrate substantial control, deliberate indifference, actual knowledge, or severe, pervasive, or objectively offensive discrimination or harassment. And because she cannot prove those elements of her Title IX claim, the School's motion for summary judgment is granted, and Regan's partial motion for summary judgment is denied.

### C. North Dakota Negligence Claim and Supplemental Jurisdiction

This leaves Regan's North Dakota state-law negligence claim. With no claim remaining that invokes original jurisdiction, the Court may choose whether to exercise supplemental jurisdiction over the remaining state-law claim. 28 U.S.C. § 1367(c)(3); see also Grinnell Mut. Reinsurance Co. v. Moon, 845 F. Supp. 2d 989, 994 (D. Minn. 2012).

When all federal claims are eliminated before trial, the balance of the factors to be considered in deciding whether to exercise supplemental jurisdiction over state-law claims typically weighs against exercising jurisdiction. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). Nothing in this case convinces the Court that it should deviate from this well-established principle. And it appears the Court now lacks subject matter jurisdiction, given the absence of the necessary diversity of citizenship following resolution of Regan's Title IX claim. With no federal claim remaining, the Court declines to continue exercising supplemental jurisdiction over the state-law negligence claim and dismisses the claim without prejudice.

---

[3] Notably, the severe, pervasive, and objectively offensive element also cuts against Regan's argument that vulnerability to the possibility of harassment is enough for Title IX liability. To the contrary, there must be some harassing and/or discriminatory conduct that occurs to gauge its severity, pervasiveness, and offensiveness.

### III. CONCLUSION

The Court has reviewed the entire record, the parties' filings, and the relevant legal authority. For the reasons above, the School's motion for summary judgment (Doc. No. 60) is **GRANTED**, and Regan's motion for partial summary judgment (Doc. No. 64) is **DENIED**. Given the extensive briefing on the motions, the Court also **DENIES** Regan's motion for oral argument (Doc. No. 77).

**IT IS SO ORDERED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated this 22nd day of March, 2023.

*/s/ Peter D. Welte*
Peter D. Welte, Chief Judge
United States District Court